### RENNELLS *v.* POTTER.

1. FRAUDULENT CONVEYANCES—EVIDENCE—SUFFICIENCY—INSOLVENT PARTNERSHIP—CONSIDERATION—INADEQUACY.

  The evidence was sufficient to show that the transfer by the members of a partnership, while it was insolvent, of horses used in delivering goods for a store and equipment and copies of route sheets bearing names of customers and orders and good will of the business to a father of one of the partners, an employee of the firm, was for an inadequate consideration, and invalid as against partnership creditors, and merely a cover for the starting of a new business under a new name in a new location.[1]

---

[1]On the question of participation by creditor in fraud of a debtor which will make a transfer to pay or secure his debt invalid as to other creditors, see note in 31 L. R. A. 609; 32 L. R. A. 71.

On the general doctrine of necessity of participation in fraudulent conveyance, see note in 32 L. R. A. 33.

2. BANKRUPTCY—FRAUDULENT CONVEYANCES—CLAIMS—TERMS OF DECREE.

In a suit by a trustee in bankruptcy, a decree setting aside a sale of a bankrupt partnership's property as fraudulent against creditors need not provide for the payment of the debts due the purchaser, as persons having claims should go into the bankruptcy court and have their rights determined.

3. SAME—INTERVENTION BY TRUSTEE—PARTIES.

A trustee in bankruptcy, who is granted the right to intervene in a suit involving the rights of the bankrupt, becomes a party for all the purposes of the suit, and thus carries with him his character as trustee in bankruptcy.

4. EQUITY—TRUSTEE IN BANKRUPTCY—AMENDMENTS.

A trustee in bankruptcy appointed since the commencement of a suit may be brought before the court by an amendment to the bill, and a supplemental bill is unnecessary, he being a new party claiming only such interest as is acquired by operation of law.

5. SAME.

Facts which existed at the time an original bill of complaint was filed, but which were not known to plaintiff because they were concealed by the defendants themselves, may be presented to the court by way of amendment instead of a supplemental bill.

Appeal from Kent; Perkins, J. Submitted April 16, 1917. (Docket No. 17.) Decided September 27, 1917.

Bill by John E. Rennells and Richard J. Prendergast, trustee in bankruptcy of the De Witt-Potter Company, against William H. Potter and others to set aside a fraudulent transfer of the assets of said company. From a decree for plaintiffs, defendants appeal. Affirmed.

*Thornton, Fuller & Starr (Ganson Taggart* and *Benn M. Corwin,* of counsel), for plaintiff Prendergast.

*Rodgers & Rodgers,* for defendants Potter.

After hearing the evidence with reference to this controversy, the trial judge made findings of fact, and granted relief, as follows:

"That some time prior to October 20, 1914, E. Bert Potter, John E. Rennells, and William (Wilbur) H. Potter entered into a fraudulent conspiracy to hinder, delay, and defraud the creditors of the De Witt-Potter Company, a copartnership composed of the said E. Bert Potter and John E. Rennells, and to convert certain of the assets of said copartnership to their use and benefit; that in the furtherance of this conspiracy the said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells, on or about October 1, 1914, started a new tea and coffee store at 609 Lyon street, in the said city of Grand Rapids, under the name of Furniture City Tea Company; that on or about October 20, 1914, the said E. Bert Potter and John E. Rennells abandoned the business of De Witt-Potter Company, then located at 211 Division avenue south, in said city, and transferred therefrom to the Furniture City Tea Company, and without consideration, six horses, six delivery wagons, several sets of harnesses, several sleighs, and the other paraphernalia used in the delivery of goods, together with copies of certain route sheets bearing the names of customers of the De Witt-Potter Company and bearing orders for goods to be delivered, and including the good will of the said business, all of which property and assets have since been used by said parties in conducting the business of the Furniture City Tea Company; that the reasonable worth and value of the said horses, wagons, harnesses, etc., was on the said 20th day of October, 1914, the sum of $1,000; that the reasonable worth and value of the said copies of the route sheets was, on said day, the sum of $2,500; that the De Witt-Potter Company on said October 20, 1914, was, and for some time prior thereto had been, insolvent; that the business of the De Witt-Potter Company was completely wrecked, appropriated, and converted by and through the fraud of the said parties; that the unpaid debts of the said De Witt-Potter Company amount to some $12,000, and that the total remaining assets amount to only about $1,500; that the said De Witt-

Potter Company, said E. Bert Potter, and John E. Rennells have all been declared bankrupt by the district court of the United States, western district of Michigan, southern division; and that complainant, Richard J. Prendergast, trustee, is the duly elected and qualified trustee in bankruptcy of the said De Witt-Potter Company.

"The court further finds that the business of the said Furniture City Tea Company is a continuation of the business of the said De Witt-Potter Company; that it is the same business conducted under the new name as a disguise; that the real proprietors of the said Furniture City Tea Company are the said E. Bert Potter and John E. Rennells; that the pretended ownership of Furniture City Tea Company by William (Wilbur) H. Potter is merely a sham and a part of the fraud and conspiracy against the creditors of the said De Witt-Potter Company; that the business and stock of merchandise which preceded the said Furniture City Tea Company at 609 Lyon street were purchased by E. Bert Potter and John E. Rennells in the name of Wilbur H. Potter, and were paid for with money which should have been applied to the payment of the debts of said De Witt-Potter Company, and that William (Wilbur) H. Potter has no financial interest therein; that the pretended sale and transfer of the said horses, wagons, harnesses, and other paraphernalia to said William (Wilbur) H. Potter was and is without consideration, and was and is another part of the said fraud and conspiracy, and that said pretended transfer was and is fraudulent and void; that all the property, assets, money, and business of said Furniture City Tea Company, as the successor of said De Witt-Potter Company, bankrupt, including all additions, accumulations, and profits to said property, assets, money, and business, or derived therefrom, are legally and equitably the property, assets, money, and business of the estate of the said bankrupt; that the said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells and all others claiming any right, title, or interest through or under them now hold and have possession of the said property, assets, money, and business in trust for the said estate, and that since the said 20th day of October, 1914, they have so held and

have been conducting the said business wrongfully and without authority; that the title to the said property, assets, money, and business is now vested in said Richard J. Prendergast, trustee.

"In short, it is quite impossible to conceive of a bolder attempt to dispose of the assets and business of an insolvent concern in the interests of those manipulating its affairs and against the interests of the creditors than is disclosed by the testimony in this case. To permit this attempt to be consummated would be a reproach upon the law and a perversion of justice.

"Now, therefore, it is hereby ordered, adjudged, and decreed, and the court now here doth hereby order, adjudge, and decree, as follows: 'That the pretended sale and transfer of the said horses, wagons, harnesses, and other paraphernalia to William (Wilbur) H. Potter was and is fraudulent and void, and is hereby set aside; that the attempted transfer of the said route sheets was and is fraudulent and void and is hereby set aside; that said Richard J. Prendergast, as trustee for and under the said court in bankruptcy, holds in trust all right, title, and interest in and to all the said property, assets, money, and business now claimed, used, or conducted by, through, or under the name of Furniture City Tea Company; that said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells are now, and have been since October 20, 1914, in possession of said property, assets, money, and business, wrongfully and without authority; that the said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells, and all others claiming any right, title, or interest through or under them in and to the said property, assets, money, and business, now hold and have possession of said property, assets, money, and business, and exercise said claim, right, title, and interest, in trust for the said estate in bankruptcy; that the said Richard J. Prendergast, trustee, is entitled to immediate possession of said property, assets, money, and business.

" 'Further ordered, adjudged, and decreed that said Richard J. Prendergast, trustee, shall take, and he is hereby fully authorized and empowered to take, immediate possession of all of the said property, assets,

money, and business, of whatsoever kind and nature and wheresoever found or located, including all the horses, wagons, harnesses, sleighs, and other paraphernalia formerly used in the business of the De Witt-Potter Company, including also all horses, wagons, and other property taken in exchange therefor or in replacement thereof, and the said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells, and each and all their employees, agents, attorneys, and representatives, and all others claiming through or under them, are hereby ordered to surrender possession and to turn the same over to the said Richard J. Prendergast, trustee, immediately upon demand and upon exhibiting a certified copy of this decree. The said Richard J. Prendergast, trustee, is further hereby fully authorized and empowered to hold the said property, assets, moneys, and business as a part of the assets of the said De Witt-Potter Company, bankrupt, and to dispose of said property, assets, money, and business according to the orders, rules, and regulations of the said court in bankruptcy and according to the law in such case made and provided, and until said business is so disposed of, or until said trustee is otherwise ordered and directed by the said court in bankruptcy, said Richard J. Prendergast, as trustee, is hereby authorized and empowered to conduct and maintain the said business of said Furniture City Tea Company as a going concern, with full authority and power in the premises.

" 'It is further ordered, adjudged, and decreed that the said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells and each and all of their employees, agents, attorneys, and representatives, and any one claiming any right, title, or interest through or under them, shall be, and they are hereby, permanently restrained and enjoined from interfering in any manner with the possession of the said trustee, with his conducting of the said business, or with his disposal of the said property, assets, money, and business, under the terms of this order and decree or under the direction of the said court of bankruptcy; to this end, the above-named parties and all of them are hereby permanently restrained and enjoined from taking, converting, appropriating, or disposing of any

of the said property, assets, money, and business, and from otherwise diverting, destroying, depreciating or depleting the said property, assets, money, and business, or the value thereof in the hands of the said trustee.

" 'Further ordered, adjudged, and decreed that said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells, and their and each of their servants, employees, representatives, and attorneys, shall, and they are hereby ordered to, disclose and account to said Richard J. Prendergast, trustee, and in such manner as may be directed and required by said court in bankruptcy, for any and all assets of De Witt-Potter Company or of its successor, the Furniture City Tea Company, that may have come to their knowledge or possession, and that any such assets so accounted for or acquired after disclosure are, and shall be administered as, a part of said estate in bankruptcy; that said Richard J. Prendergast, trustee and intervening complainant aforesaid, recover his costs in this suit sustained of and from the said E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells, the same to be taxed, and that he have execution therefor.

" 'It appearing that the defendants John Ripstra, William Dennison, Nicholas Voss, Albert Remelts, and Shirley Teachout were not knowingly or intentionally parties to the aforesaid conspiracy and fraud of E. Bert Potter, William (Wilbur) H. Potter, and John E. Rennells, no costs shall be taxed against them, but they are hereby held subject to the provisions and requirements of this decree as to disclosure, accounting, and injunction.' "

From this decree, defendants William H. Potter and E. Bert Potter have appealed.

KUHN, C. J. (*after stating the facts*). By elaborate argument at the hearing and in well-prepared briefs counsel for the appealing defendants earnestly contend that these findings of the trial judge and the relief granted were without justification, and that there was no testimony to warrant the conclusion that these parties were engaged in a conspiracy to defraud creditors, but that rather the parties acted honestly in their

dealings and established the new business, to wit, the Furniture City Tea Company, not with the idea of taking over the business of the De Witt-Potter Company, but for the legitimate purpose of establishing a new business and getting their customers wherever they could. With these contentions we cannot agree. This record cannot be read, in our opinion, without irresistibly coming to the conclusion that the alleged sale and transfer of the horses, wagons, and harnesses in July, 1914, was fraudulent in fact. Clearly the sale was made when the De Witt-Potter Company was insolvent; it was made to the father of one of the partners and an employee of the firm, who knew, or ought to have known, of its financial condition. It also appears that the sale was made for an inadequate consideration. It appears that property worth $1,155 was sold for $700. It is claimed that the defendant William H. Potter had loaned the De Witt-Potter Company the sum of $700, that this loan was made in two installments of $300 and $400, respectively, in the months of February and March, 1914, and that the De Witt-Potter Company gave William H. Potter its note or notes to cover that amount. It appears that on March 1, 1914, the De Witt-Potter Company gave the Musselman Grocer Company a financial statement for the purpose of securing credit, and, according to this statement, William H. Potter was not a creditor of the firm. Furthermore, the books of the company fail to show that William H. Potter was a creditor to any amount, although the alleged transfer of property was carefully recorded. The horses and wagons did not change possession after the sale, and no creditor was given any notice of them, and the bill of sale was never recorded, and did not make its appearance until after the bankruptcy, and Mr. Voss, one of the drivers, testified that Mr. Rennells told him that it was dated back.

Late in September following the sale of the horses, etc., we find negotiations pending for the purchase of the little grocery stock at 609 Lyon street, in which negotiations John E. Rennells, Bert Potter, and William H. Potter are active. The circumstances, which the record discloses took place at the old store and at the new place of business, in our opinion clearly indicate that this whole move was carefully planned and premeditated. On the evening of October 19th, when the drivers came to the office, they were paid for one day's work, and were told by Mr. Rennells that the De Witt-Potter Company was going to close up, that they would not be needed any longer, and that they could get a job at the Furniture City Tea Company if they would report at 609 Lyon street the next morning. In the meantime this little grocery business had been transformed into a tea and coffee store, prize tickets had been printed, and other preparations had been made to start the business full fledged as a tea and coffee store on the 20th. It is unnecessary for the purposes of this opinion to attempt to review all the circumstances and facts which sustain the theory that the change was not sudden, unexpected, or unpremeditated. It is sufficient to say that, as a result of these acts, the De Witt-Potter Company was forced into bankruptcy, and what assets were left to the estate had to be sold for about $1,300, and there was thus left less than $1,500 to pay debts amounting to more than $12,000.

We think it is clear that fraud permeated this entire transaction and every detail of it, that the findings and conclusions of the circuit judge are fully justified, and agree with his conclusion that "to permit this attempt to be consummated would be a reproach upon the law and a perversion of justice."

Considerable complaint is made because the decree did not provide for the payment of the debts and obli-

gations of the Furniture City Tea Company and the claims of Mr. William H. Potter. The lower court found and decreed that the Furniture City Tea Company is the De Witt-Potter Company under a new name, which, as we have already said, we believe the evidence fully justified. William H. Potter and all others who had dealings with this bankrupt, if they have any claim, should go into the bankruptcy court and have their rights there determined.

It is also contended by the appellant that the bankruptcy act was not properly in issue in this case, because it appears that the bill of complaint was filed in October, 1914, and the petition for bankruptcy was not filed until in November, 1914, and that the trustee in bankruptcy should have been brought before the court by way of supplemental bill, and not by way of amendment to the original bill. In the case at bar the trustee, after having been authorized to do so by the bankruptcy court, petitioned the lower court for the right to intervene, and this right was granted by an order of the court. See *Stone* v. *Ingham Circuit Judge,* 105 Mich. 234 (63 N. W. 79) ; *Earl* v. *Jacobs,* 177 Mich. 163 (142 N. W. 1079). The intervener having by leave of the court become a party, he becomes such for all purposes of the suit, and thus carries with him his character as trustee in bankruptcy. 16 Cyc. p. 203.

The rule with reference to a supplemental bill is thus stated by Mr. Jennison in his work on Chancery Practice, p. 359:

"A supplemental bill is used for the purpose of supplying some irregularity or defect discovered in the frame of the original bill, or in some proceedings under it, or where by an event subsequent to the commencement of the suit a new interest in the matter in litigation is claimed by an existing party to the suit, or a new party claims, but not by mere operation of law, the interest which was claimed by an existing party."

The trustee in bankruptcy was a new party claiming only such interest as acquired by mere operation of law, in which case, in our opinion, it is not necessary that a supplemental bill be filed, it appearing that, aside from the adjudication in bankruptcy and the trustee's election and qualification as such, the facts set up by the complainant's second pleading are facts which existed at the time the original bill of complaint was filed, but which were not then known to the complainant, for the reason that they were concealed by the debtors themselves. Under these circumstances it is entirely proper to present them to the court by way of amendment instead of by supplemental bill.

We are of the opinion that the trial judge has reached an equitable and just conclusion, and therefore affirm his decree, with costs to the appellee.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.